POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN DIETEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE, and CLAIRE MCDONOUGH,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Glenn Dietel ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public

1

documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Rivian Automotive, Inc. ("Rivian" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Rivian securities between March 1, 2023 and February 21, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Rivian, together with its subsidiaries, designs, develops, manufactures, and sells electric vehicles ("EVs") and accessories. The Company sells its products directly to customers in the consumer and commercial markets.

3.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Rivian had overstated demand for its products, as well as its ability to withstand negative, near-term macroeconomic impacts; (ii) accordingly, Rivian's business was experiencing reduced demand and increased customer cancellations as a result of, *inter alia*, high interest rates; (iii) as a result, Rivian's order bank had significantly deteriorated; (iv) all the foregoing was likely to, and did, negatively impact the Company's anticipated earnings and vehicle production targets for 2024; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.     On February 21, 2024, Rivian announced its fourth quarter and full year 2023 financial results.  Among other items, Rivian announced that it expected to produce 57,000 vehicles in 2024, significantly lower than analyst expectations of 80,000 vehicles.  The Company further forecasted an adjusted EBITDA[1] loss of $2.7 billion for full year 2024, compared to analyst expectations of $2.59 billion, and announced plans to cut 10% of salaried staff, citing economic uncertainty.  On the subsequent earnings call to discuss these results, Rivian's Chief Executive Officer ("CEO"), Defendant Robert J. Scaringe ("Scaringe"), revealed that "historically high interest rates . . . ha[ve] negatively impacted demand" and "[o]ur order bank has notably reduced overtime . . . along with the impact of cancellations

---

[1] "EBITDA" refers to earnings before interest, taxes, depreciation, and amortization.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

due to both the macroenvironment and [various] customer factors" such as "delivery timing, location of order, monthly payments, and customer readiness."

5.     On this news, Rivian's stock price fell $3.94 per share, or 25.6%, to close at $11.45 per share on February 22, 2024.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

9.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Rivian is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

10.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

11.     Plaintiff, as set forth in the attached Certification, acquired Rivian securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

12.     Defendant Rivian is a Delaware corporation with principal executive offices located at 14600 Myford Road, Irvine, California 92606.  Rivian's Class A common stock trades in an efficient market on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "RIVN".

13.     Defendant Scaringe has served as Rivian's CEO at all relevant times. Defendant Scaringe is also the Company's founder.

14.     Defendant Claire McDonough ("McDonough") has served as Rivian's Chief Financial Officer at all relevant times.

15.     Defendants Scaringe and McDonough are collectively referred to herein as the "Individual Defendants".

16.     The Individual Defendants possessed the power and authority to control the contents of Rivian's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Rivian's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Rivian, and their access to material information available to them but not to the public, the Individual

Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

17. Defendant Rivian and the Individual Defendants are collectively referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

18. Rivian, together with its subsidiaries, designs, develops, manufactures, and sells EVs and accessories. The Company's products include, among others, the R1T, a two-row, five-passenger pickup truck, and the R1S, a three-row, seven-passenger sport utility vehicle, both of which are marketed as consumer EVs, as well as the Electric Delivery Van ("EDV"), which is marketed as a commercial EV. Rivian sells its products directly to customers in both the consumer and commercial markets.

### Materially False and Misleading Statements Issued During the Class Period

19. The Class Period begins on March 1, 2023. On February 28, 2023, during after-market hours, Rivian issued a press release announcing that it had published a letter to its website containing the Company's fourth quarter and full year 2022 financial results (the "4Q/FY22 Shareholder Letter"). The 4Q/FY22 Shareholder Letter stated, *inter alia*:

The successful introduction of the R1T and R1S has been underpinned by strong demand and near categorically positive industry accolades – the result is a net preorder backlog that extends into 2024.

\* \* \*

Rivian's rapid production ramp and introduction of multiple vehicle platforms has afforded our team significant manufacturing, operations, and development experience in a compressed timeframe. We are in the process of aggressively applying these learnings to our first mass market vehicle, the R2, and to our new manufacturing facility in Georgia with the goal of achieving a considerably lower cost structure.

20.     The 4Q/FY22 Shareholder Letter also stated, in relevant part:

In addition to our enhanced customer experience, we expect to demonstrate considerable progress against our product development roadmap in 2023. Deliveries of a ~400-mile R1 Max Pack variant are planned to begin in Fall 2023. We intend to make this configuration available to our existing preorder customers. We expect high demand and interest for this new offering.

21.     Also on February 28, 2023, during after-market hours, Rivian filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2022 (the "2022 10-K"). The 2022 10-K stated, *inter alia*:

**Seasonality**

Historically, the automotive industry has experienced higher revenue in the spring and summer months. Additionally, we expect volumes of commercial vehicle sales to be less in the winter months, as customers shift their focus to making last mile deliveries during holidays, rather than incorporating more vehicles into their fleet. ***We do not expect such seasonality in demand to significantly impact our operations in the near-term as we scale our business due to our backlog of preorders***; however, we may experience seasonal variations in our business in the long-term.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Competition**

We aspire to drive meaningful change in the world's transition to sustainable mobility. ***We believe multiple industry tailwinds such as regulatory support and shifting consumer demand will continue to drive a transition from legacy internal combustion engine ("ICE") vehicles to EVs.***

(Emphases in bold and italics added.)

22.    In discussing factors affecting Rivian's performance, the 2022 10-K represented, in relevant part:

The R1T, R1S, and EDV appear to resonate with customers based on positive responses to vehicles delivered and preorder data. We believe the Rivian brand is becoming established in the most attractive consumer and commercial vehicle market segments.

\* \* \*

[W]e expect to substantially raise brand awareness by connecting directly with our community through engaging content, rich digital experiences, and immersive events. We anticipate that these activities will lead to additional preorders and deliveries, and, as a result, increase our base of Rivian customers.

23.    Moreover, the 2022 10-K assured investors that "[w]e believe we are well-positioned for international expansion in light of healthy global demand for EVs and for the vehicle segments in which we currently or expect to operate."

24.    Appended as exhibits to the 2022 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that the 2022 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements

8

made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report[.]"

25.    On May 9, 2023, Rivian issued a press release announcing that it had published a letter to its website containing the Company's first quarter 2023 financial results (the "1Q23 Shareholder Letter").  The 1Q23 Shareholder Letter stated, *inter alia*, that "[d]uring the first quarter of 2023, R1 production continued to grow quarter-over-quarter and EDV is ramping production after the successful introduction of our in-house motor[.]"

26.    In addition, the 1Q23 Shareholder Letter stated, in relevant part, that "[w]e plan to engage with our preorder customers and drive additional demand by expanding our demo drive program, offering more opportunities for potential customers to experience a Rivian vehicle."

27.    Also on May 9, 2023, Rivian filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2023 (the "1Q23 10-Q").  The 1Q23 10-Q continued to represent that "[w]e do not expect . . . seasonality in demand to significantly impact our operations in the near-term as we scale our business due to our backlog of preorders" and that "[w]e believe we are well-positioned for international expansion

9

in light of a healthy global demand for EVs and for the vehicle segments in which we currently or expect to operate."

28.     Moreover, in discussing factors affecting Rivian's performance, the 1Q23 10-Q contained the same statements referenced in ¶ 22, *supra*, regarding the purported positive preorder data that the Company had observed, as well as the brand awareness that would lead to additional preorders and deliveries.

29.     Appended as exhibits to the 1Q23 10-Q were substantively the same SOX certifications as referenced in ¶ 24, *supra*, signed by the Individual Defendants.

30.     On August 8, 2023, Rivian issued a press release announcing that it had published a letter to its website containing the Company's second quarter 2023 financial results (the "2Q23 Shareholder Letter"). The 2Q23 Shareholder Letter stated, *inter alia*:

> Results for the second quarter of 2023 reflect strong financial and operational progress as we continued to ramp production, improved cost efficiency, successfully introduced new technologies, and enhanced the customer experience. On a quarter-over-quarter basis, production and deliveries grew ~50% and ~60%, respectively while gross profit per vehicle delivered improved by ~$35,000.
>
> * * *
>
> Due to the progress we have seen to date on our production lines, the ramp of our in-house motor line, and the supply chain outlook, we are increasing our 2023 production guidance to 52,000 total units. Our progress on cost management has also continued and therefore we are improving our Adj. EBITDA guidance to $(4,200) million. We are also

10

lowering our capital expenditures guidance to $1,700 million with the reduction largely driven by a timing shift of some expenses to 2024.

31.    The 2Q23 Shareholder Letter also represented, in relevant part, that "[f]or the remainder of 2023, we intend to maintain the momentum of the first half of the year by continuing to deliver against our value drivers: production ramp, cost efficiency, future platforms and technologies, and customer experience."

32.    Also on August 8, 2023, Rivian filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2023 (the "2Q23 10-Q").  The 2Q23 10-Q contained the same statements referenced in ¶ 27, *supra*, regarding demand for Rivian's products.

33.     Moreover, in discussing factors affecting Rivian's performance, the 2Q23 10-Q contained substantively the same statements referenced in ¶ 22, *supra*, regarding the purported positive preorder data that the Company had observed, as well as the brand awareness that would lead to additional preorders and deliveries.

34.    Appended as exhibits to the 2Q23 10-Q were substantively the same SOX certifications as referenced in ¶ 24, *supra*, signed by the Individual Defendants.

35.    On November 7, 2023, Rivian issued a press release announcing that it had published a letter to its website containing the Company's third quarter 2023 financial results (the "3Q23 Shareholder Letter").  The 3Q23 Shareholder Letter stated, *inter alia*:

11

Results for the third quarter of 2023 reflect continued progress against our key value drivers including ramping production, improving cost efficiency, successfully introducing new technologies, and enhancing the customer experience. Production during the third quarter of 2023 demonstrated our strongest quarterly rate to date with an annualized production rate of over 65,000 units, while financial results continue to benefit from our focus on driving down costs. Importantly, investment in new technologies and our direct-to-customer operations are contributing to Rivian's competitive differentiation by enhancing the features and capabilities of our consumer and commercial platforms as well as improving the customer experience.

Due to the progress experienced on our production lines, the ramp of our in-house motor line, and the supply chain outlook, we are increasing our 2023 production guidance to 54,000 total units. Our progress on cost management has also continued and therefore we are improving our Adj. EBITDA guidance to $(4,000) million. We are also lowering our capital expenditures guidance to $1,100 million.

36.     The 3Q24 Shareholder Letter also stated, in relevant part, that "we forecast reaching positive gross profit in 2024 and therefore expect that by the end of 2024, we will not have material LCNRV [lower of cost or net realizable value] inventory charges associated with goods manufactured at our Normal facility."

37.     Also on November 7, 2023, Rivian filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2023 (the "3Q23 10-Q"). While the 3Q22 10-Q added "Rising Interest Rates" to its discussion of factors affecting Rivian's performance, Defendants downplayed the severity of the negative impacts of this factor on the Company's near-term prospects, merely warning of risks that "may" or "could" materialize "if" certain aggravating conditions occurred:

- ***Inflation and Rising Interest Rates.*** The United States economy has experienced inflation in various market segments. In order to help slow inflation, the Federal Reserve Bank in the United States has raised interest rates rapidly and substantially in recent years, and it is expected that interest rates will remain elevated for longer than previously anticipated. This ***may*** result in vehicle financing becoming less affordable to customers, influence customers' buying decisions to less expensive vehicles, or cause tightening of lending standards. ***If*** we are unable to fully offset higher costs through price increases or other measures, especially in the near-term as we continue to work through the backlog of preorders, or ***if*** we experience lower demand for our vehicles, we ***could*** experience an adverse impact on our business, prospects, financial condition, results of operations, and cash flows.

(First emphasis in original.)  Plainly, the foregoing risk warning was a generic catch-all provision that was not tailored to Defendants' actual known risks regarding the reduced demand and customer cancellations Rivian was experiencing as a result of rising interest rates, much less the significant negative impact this was having on the Company's deteriorating order bank and earnings and production projections for 2024.

38.    Indeed, in the same discussion of factors affecting Rivian's performance, the 3Q23 10-Q contained substantively the same statements referenced in ¶ 22, *supra*, regarding the purported positive preorder data that the Company had observed, as well as the brand awareness that would lead to additional preorders and deliveries, while specifically citing Rivian's "order bank" as a factor showing that "[t]he R1T, R1S, and EDV appear to resonate with customers[.]"

39.     Likewise, the 3Q23 10-Q continued to assert that "[w]e do not expect . . . seasonality in demand to significantly impact our operations in the near-term as we scale our business *due to our backlog of preorders*" (emphasis added).

40.     Appended as exhibits to the 3Q23 10-Q were substantively the same SOX certifications as referenced in ¶ 24, *supra*, signed by the Individual Defendants.

41.     The statements referenced in ¶¶ 19-40 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Rivian had overstated demand for its products, as well as its ability to withstand negative, near-term macroeconomic impacts; (ii) accordingly, Rivian's business was experiencing reduced demand and increased customer cancellations as a result of, *inter alia*, high interest rates; (iii) as a result, Rivian's order bank had significantly deteriorated; (iv) all the foregoing was likely to, and did, negatively impact the Company's anticipated earnings and vehicle production targets for 2024; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

42.     On February 21, 2024, during after-market hours, Rivian issued a press release announcing its fourth quarter and full year 2023 financial results.  Among

14

other items, the press release revealed Rivian's plans to cut 10% of salaried staff, as well as disappointing guidance for 2024, including production of only 57,000 vehicles and an adjusted EBITDA loss of $2.7 billion, stating, in relevant part:

> Economic and geopolitical uncertainties and pressures, most notably the impact of historically high interest rates, have informed Rivian's expectations for 2024. With these market conditions, the company expects to produce 57,000 vehicles in 2024, in line with 2023 production. For 2024, the company is guiding towards . . . an Adjusted EBITDA* of $(2,700) million . . . . Today, Rivian also announced it is reducing its salaried workforce by approximately 10%.

43.    Later that day, Rivian hosted a conference call with investors and analysts to discuss these results.  During the call, Defendant Scaringe commented on Rivian's disappointing production and earnings guidance, stating, in relevant part:

> As we start 2024, I want to address the broader industry context, which I referred to during our third quarter call. Our business is not immune to existing economic and geopolitical uncertainties. Most notably, the impact of historically high interest rates, which has negatively impacted demand. In this fluid environment, we appreciate the expressed interest in demand visibility from the investment community. The conversion of orders to sales can be impacted by several factors, including delivery timing, location of order, monthly payments, and customer readiness.

> Our order bank has notably reduced overtime as deliveries have more than doubled in 2023 versus 2022 along with the impact of cancellations due to both the macroenvironment and the customer factors I just referenced. For 2024, we expect our total deliveries to be derived from our existing backlog as well as new orders generated during the year.

44.    As *Yahoo! Finance* reported the following day, February 22, 2024, in an article entitled "Rivian stock tanks to all-time low after job cuts, slash in

production outlook", Rivian's 2024 production guidance of 57,000 vehicles was significantly lower than analyst expectations of 80,000 vehicles, and the Company's 2024 guidance of an adjusted EBITDA loss of $2.7 billion came in higher than analyst expectations of an adjusted EBITDA loss of only $2.59 billion.   In particular, the article stated, in relevant part:

> Rivian (RIVN) stock tanked to a record low after the electric adventure vehicle maker reported mixed fourth quarter results and a production and profit forecast that missed Wall Street expectations.
>
> Rivian said on Wednesday it sees vehicle production for 2024 hitting 57,000 units, well below the 80,000 units expected. In terms of full-year profitability, Rivian said it sees an adjusted EBITDA loss of $2.70 billion vs. $2.59 billion expected . . . . Rivian said it would cut 10% of salaried staff, citing economic uncertainty.
>
> Rivian stock fell more than 27% in midday trading on Thursday.

(Internal images omitted.)

45.    On this news, Rivian's stock price fell $3.94 per share, or 25.6%, to close at $11.45 per share on February 22, 2024.

46.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

47.    During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true

16

information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Rivian securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

49.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Rivian securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Rivian or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

50.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

51.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

52.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Rivian;

- whether the Individual Defendants caused Rivian to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Rivian securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

53.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

54.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Rivian securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Rivian securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

55.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

56.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

57.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

58.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

59.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they

were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Rivian securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Rivian securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

60.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Rivian securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Rivian's finances and business prospects.

61.     By virtue of their positions at Rivian, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would

reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

62.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Rivian, the Individual Defendants had knowledge of the details of Rivian's internal affairs.

63.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Rivian.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Rivian's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Rivian securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Rivian's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Rivian securities at artificially inflated

prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

64.     During the Class Period, Rivian securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Rivian securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Rivian securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Rivian securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

65.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

66.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with

their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

67.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

68.     During the Class Period, the Individual Defendants participated in the operation and management of Rivian, and conducted and participated, directly and indirectly, in the conduct of Rivian's business affairs.  Because of their senior positions, they knew the adverse non-public information about Rivian's misstatement of income and expenses and false financial statements.

69.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Rivian's financial condition and results of operations, and to correct promptly any public statements issued by Rivian which had become materially false or misleading.

70.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Rivian disseminated in the

marketplace during the Class Period concerning Rivian's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Rivian to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Rivian within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Rivian securities.

71.     Each of the Individual Defendants, therefore, acted as a controlling person of Rivian. By reason of their senior management positions and/or being directors of Rivian, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Rivian to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Rivian and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

72.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Rivian.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  April 19, 2024                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165

Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS